[No. 17378.    Department One.    February 3, 1923.]

SANGER LUMBER COMPANY, *Appellant,* v. WESTERN LUMBER EXCHANGE, *Respondent.*[1]

PRINCIPAL AND AGENT (1)—RELATION—CONTRACT—CONSTRUCTION. A contract of agency is created by an agreement whereby plaintiff was to manufacture lumber and place same on cars, and defendant was to make advances for that purpose, make sales and collections, retaining a certain percent for its service.

PRINCIPAL AND AGENT (21)—ACTIONS—BREACH OF CONTRACT. A contract whereby plaintiff was to manufacture lumber and place same on cars and defendant was to make advances for that purpose, make sales and collections, retaining a certain percent for its services, is not breached by either party from the fact that, when it became impossible to secure cars to fill a certain order, the order was lost and the price of lumber dropped resulting in a loss, where plaintiff did all it could to get cars, and had agreed simply to "make all shipments as expeditiously as possible" and nothing was done by either party to terminate the contract.

APPEAL (385)—REVIEW—ESTOPPEL—INVITED ERROR. Error cannot be predicated by plaintiff upon bringing into the case a contract pleaded in the complaint and which was made the basis of recovery.

CORPORATIONS (193)—ACTIONS—CAPACITY TO SUE. An appeal from a judgment on defendant's cross-complaint will not be dismissed on account of the failure of plaintiff, a foreign corporation, to file its articles of incorporation and pay its license fee, where appellant, though not entitled to recover, could defend against respondent's cross-complaint without complying with the statute.

Appeal from a judgment of the superior court for Spokane county, Oswald, J., entered February 10, 1922, upon findings in favor of the defendant, in an action on contract, tried to the court. Affirmed in part and reversed in part.

*O. C. Moore,* for appellant.

*John A. Peacock* and *Davis, Heil & Davis,* for respondent.

[1]Reported in 212 Pac. 580.

BRIDGES, J.—The plaintiff owned and operated a saw-mill in Benewah county, Idaho.   Immediately sur-rounding it were considerable tracts of timber, which had been or could be obtained to operate the mill.   The defendant was a lumber broker, having his principal place of business in Spokane, Washington.   On Novem-ber 13, 1919, these parties entered into a written con-tract, the salient features of which are the following: The plaintiff was to cut in its mill during the season of 1919-20 some two million feet of lumber, and the de-fendant was to finance the operation of the mill and the logging camp to an amount not to exceed $15 per 1,000 feet of lumber cut.   The logging operations were to commence at once and the sawmill operations were to commence in the spring of 1920.   The plaintiff was to furnish equipment for the operation of the mill and logging camp, and also to saw the lumber according to such thicknesses and widths as would be required by defendant.   After the lumber was piled and sufficiently dried, the plaintiff was to haul it to Tekoa, a small railroad station in the state of Washington, and load it on cars to be obtained by it as expeditiously as pos-sible.   The defendant, in addition to financing the oper-ations to the extent mentioned, was to be permitted, and it was its duty, to sell the lumber and enter into contracts in that connection; provided, however, no lumber should be sold until both of the parties had agreed upon the price, and the defendant was to make all collections and be responsible for all of the sales price, and was to receive $2 per 1,000 feet for its ser-vices, and the balance, after deducting charges on ac-count of advancements made by the defendant, was to be paid to the plaintiff.

Thereafter the plaintiff commenced its logging camp and the operation of its sawmill, and by the middle of the summer of 1920 it had manufactured considerable

quantities of lumber and the defendant had advanced considerable sums in that connection. Meanwhile, acting under this contract, and about the middle of May, 1920, the defendant entered into an agreement with the Harrison Box Company, a corporation of Idaho, whereby it sold to the box company, and the latter agreed to purchase, 1,300,000 feet of lumber at $35 per 1,000, to be loaded on cars at Tekoa, such lumber to be delivered at the rate of not more than four cars per week. This contract was OK'd and accepted by the plaintiff, and it proceeded to bend its energy to its fulfillment. There was such a shortage of cars that by November, 1920, only a little more than 500,000 feet had been delivered under this order, although the demand of the box company was for a much greater quantity. Finally, on account of slowness of deliveries, that company refused to take any more lumber under its contract. About June, 1921, this suit was started.

The complaint, in substance, alleges the making of the contract between the parties to this action, and also the making of the Harrison Box Company contract, and that, in the fall of 1920, the defendant wrongfully refused to permit plaintiff to ship to the box company any more lumber, and that, for that reason, none was thereafter shipped; that there remained unfilled of such contract 628,000 feet; that, after the Harrison Box Company contract was entered into, the price of lumber became very much lower and the value of such lumber as was ordered by the Harrison company for $35 per 1,000 feet was not worth and could not be sold for more than $15 per 1,000, and that because the defendant had not permitted the plaintiff to complete the box company contract, it has been damaged in a large sum of money. It is also alleged that by November, 1920, the plaintiff, under its contract

with the defendant, had cut nearly 100,000 feet of lumber in excess of that which had been sold to the box company, and that defendant had wrongfully failed and refused to sell such lumber before the price went down, although it was its duty so to do, and that plaintiff has been damaged on that account.

The answer was consistent with the general facts as we have heretofore stated them, but alleged that it was the fault of the plaintiff that the Harrison Box Company contract was not complied with. By cross-complaint it alleged that it had advanced various sums of money to the plaintiff and that there remained at that time unpaid some $16,000, recovery of which it sought, in addition to seeking damages at the rate of $2 per 1,000 (its commission) on account of the lumber which it was alleged the plaintiff had wrongfully failed to deliver under the Harrison Box Company contract.

The case was tried to the court without a jury, and judgment was entered dismissing the plaintiff's cause, but giving judgment to the defendant for the unpaid advancements in a sum in excess of $16,000. Plaintiff has appealed from the whole of this judgment.

The appellant seems to contend that the effect of the contract between it and the respondent was that the latter became the purchaser of the lumber which was to be manufactured under its terms. We cannot so hold. The contract is long and not clear in details. When read as a whole, and in connection with the situation and circumstances of the parties, it seems plain to us that it amounted to nothing more nor less than this; that the appellant was to manufacture the lumber and the respondent was to make various advancements to it for that purpose, and that, as the lumber was manufactured, it was to be taken by the appellant to the nearest railroad station and there placed by it upon cars to be obtained by it to be shipped according

to the directions of the respondent, and that the respondent should find purchasers for the lumber and make all collections, retaining $2 per 1,000 feet for its services, paying the balance to the appellant. This amounts to nothing more nor less than an agency, and the whole question involved in this case is whether either of the parties has breached the contract to the damage of the other.

The testimony is quite conclusive that the respondent performed its part of the contract by making the advancement required and in making satisfactory sales of the lumber to the Harrison Box Company. It also satisfactorily appears that the appellant manufactured the lumber in accordance with the terms of the contract, and was at all times ready, willing and able to furnish the lumber to fill the box company contract, but that it was not filled simply because the appellant was unable to obtain sufficient cars upon which to load the lumber. The box company was at all times insisting that it be shipped more lumber each week, and because appellant could not get the cars to comply with these demands, the box company finally refused to take any more of the lumber. Appellant did everything it could to get the cars. The contract between it and respondent did not in absolute terms require it to ship any particular amount of lumber during any particular period. It did not breach the contract because of its inability to get cars. That contract simply provides that appellant shall order the cars, load them and "make all shipments as expeditiously as possible." This it did.

This is all there is to this Harrison Box Company matter. We are wholly unable to see that either of the parties has breached the contract, or that either has any claim against the other for damages arising out of the box company sale.

The appellant contends that the contract between the respondent and the Harrison Box Company should not have been brought into the case and was not within the issues. But this objection cannot be well taken because this very contract is pleaded by the complaint. Indeed, the major portion of its case is based on that contract and it is claimed that the respondent wrongfully denied appellant the right to comply with its terms and furnish the lumber.

Appellant further contends that, even if it should be found that the lumber was not shipped to the box company as rapidly as it should have been, yet that company, having received such as was shipped, had no right to terminate the contract. The fact remains, however, that it did terminate the contract and did refuse to take any more of the lumber, and it was this action which left the appellant with a lot of lumber on its hands which must be disposed of at much lower prices than if it had furnished the lumber to the box company. The respondent cannot be held responsible for the conduct in this respect of the Harrison Box Company. This disposes of that portion of the case with reference to the Harrison Box Company lumber.

It is alleged in the complaint that the respondent failed to sell other lumber which had been manufactured under the original contract, and damage is claimed on that account. But we do not find sufficient in the evidence to support this charge. Indeed, nearly all the testimony of both parties had reference to the box company contract, each trying to show that the other was at fault in connection with it.

Such being the condition of the case, as we see it, there is no ground upon which the appellant may recover, and the lower court was right in denying it any relief.

But we think the trial court was wrong in entering judgment in favor of the respondent and against the appellant for the balance of the advances that had been made. If our view as hereinbefore expressed is right, then neither of the parties to this action has been at fault under the contract, and the result of that conclusion must be that the contract stands just as it would have stood had not this suit been brought, or had the parties mutually cancelled and annulled the Harrison Box Company contract. If the appellant has not breached its contract, by what right may the respondent in this action recover the whole of the unpaid advancements? So far as the testimony here shows, the contract still exists whereby the additional lumber is to be manufactured by appellant and additional sales made by the respondent. We must not prejudge any possible future litigation between these parties over this contract, consequently it must be understood that we are discussing the contract only in the light of the testimony before us. This is one of those cases where the parties should be left in identically the same position as they would have been in had this litigation not occurred.

We have not overlooked respondent's motion to dismiss the appeal for the reason that appellant is a foreign corporation and has not complied with the laws of this state, in that it has failed to file its articles of incorporation and pay its annual license fee. Since we hold that appellant is not entitled to recover, and since it would have a right to defend against the cross-complaint without having complied with our state laws, it is unnecessary for us to dispose of that motion.

The judgment is affirmed in so far as it denies any relief to the appellant, and is reversed in so far as it

awards any judgment other than costs in favor of the respondent.

PARKER, MACKINTOSH, HOLCOMB, and MITCHELL, JJ., concur.